MAY, J.
A juvenile appeals a final disposition order finding him guilty of attempted burglary of a dwelling and criminal mischief, withholding adjudication, and sentencing him to probation and community service. He argues that trial counsel was ineffective on the face of the record for not moving to suppress his videotaped statement, and that the trial court erred in denying his motion to dismiss. We agree with the latter argument in part and reverse.
The State filed a Petition for Delinquency against the juvenile, alleging that he committed an attempted burglary of a residence and criminal mischief. After his arrest, the juvenile gave a videotaped statement. And, although he was adjudicated incompetent to proceed due to his age and immaturity, his defense counsel never moved to suppress the statement.
*151 On the day of trial, defense counsel informed the court that he and a previous prosecutor had informally agreed that the juvenile’s statement would not be admitted. Defense counsel assumed the finding of incompetency carried over to the juvenile’s ability to waive his Miranda rights. Given the informal agreement, he did not file a written motion.
Defense counsel addressed the issue again when the State admitted the statement into evidence. He indicated that his agreement had been with a prior prosecutor, and he did not want to “blindside” the new prosecutor. For this reason, he simply placed his understanding on the record.
The victims’ son testified that he was living at his parents’ home at the time of the attempted burglary. The backyard was enclosed and accessible through a gate near the kitchen/patio area. The gate was usually locked.
Around 9:00 a.m., the victims’ son heard a knock on the front door and two people talking. Five to ten minutes later, he heard voices coming from the kitchen area. He then heard a window break so he went to investigate. He discovered a broken window in the sunroom/indoor patio located at the back of the house. He went to his parents’ bedroom, locked the door, and called the police.
When law enforcement responded, an officer saw a person, later identified as the juvenile, crossing the street in front of the victims’ house. The officer did not stop him at that point. The officer went to the back of the house to see if the perpetrators were still there. He then issued a BOLO for the person he had seen crossing the street.
The officer identified photographs of two distinct sets of shoe prints found outside the broken window. One set of shoeprints had a zigzag pattern; the other did not. The shoeprints appeared to be fresh.
Another deputy testified that she saw the juvenile identified in the BOLO standing alone either across the street or just around the corner from the victims’ house. She detained him. The juvenile told the officers that he lived down the street and was coming back from McDonald’s. Both the officer and the deputy noticed a fresh abrasion on the inside of the juvenile’s left forearm. The juvenile told them that he scratched his arm the day before.
The juvenile was wearing white Nike shoes with a zigzag pattern on the soles. Although he was wearing a black leather jacket when first seen, he did not have it on when the officer spoke to him later that morning. The juvenile later told the investigating detective that he gave the jacket to his mother when she came to the scene because she was cold.
The officer testified that the grooves in the soles of the juvenile’s shoes were filled with dirt similar to the dirt under the victim’s broken window. The officer agreed there was similar dirt next to the sidewalks and throughout the neighborhood.
A detective interviewed the juvenile two months later. In the videotaped interview, the juvenile indicated that he had been “read his rights” before, and the detective read Miranda warnings to him. The juvenile was fifteen years old at the time. After reading each right, the detective asked if he understood. The juvenile did not verbally respond, but initialed the waiver form after each question. The interrogation started after midnight and finished a little after 1:00 a.m. A copy of the written waiver was entered into evidence.
During the interview, the juvenile initially denied any involvement, but the detective told him that the shoeprints and the *152 scratch on his arm suggested he may have broken the window. The detective then encouraged the juvenile to be honest. At that point, the juvenile stated: “I don’t want to talk because now you saying I’m lying.” The juvenile remained silent for about 40 seconds, but then gave brief answers to irrelevant questions.
The juvenile told the detective that he and his sister were walking home from McDonald’s when a boy from his school and another boy told him they were going “to hit that house.” The juvenile told the boys, “I ain’t on this. I’m with my sister. This ain’t me.” He “cleared it” and walked away. When the police came, he told his sister to go home, and that is when the deputy stopped him.
The detective then asked the juvenile if he went into the victims’ backyard. The juvenile responded: “I was standing by the gate, jumped the gate. I’m like, ‘Man, I ain’t on this. You-all tripping.’ ” The other boys stayed in the yard and the juvenile left. When the detective asked who broke the window, the juvenile told him that it was the boy from school. The juvenile maintained he could not have cut his arm on the window because he was wearing the long-sleeved leather jacket, a fact that was corroborated by the officer’s testimony.
The juvenile also denied leaving shoe-prints near the window and told the detective that all three boys were wearing the same Nike sneakers. At the end of the statement, the juvenile said that he initially agreed to go with the boys because he was bored. But when the boys asked if he was ready, he said, “No. I’m fitting to clear it. I don’t feel it. I ain’t on that this morning.”
After the State rested, the defense moved for a Judgment of Dismissal and argued that the State had failed to prove every element beyond a reasonable doubt. The court denied the motion. The defense did not call any witnesses.
The court made specific findings of fact. The court found: (1) the scratch on the juvenile’s arm was insignificant because there was nothing tying it to the incident; (2) the juvenile was wearing “as typical a shoe as you can have”; (3) the dirt in the tread of the shoe was the same dirt that could be found throughout the neighborhood; and (4) “nothing about ... the dirt on his sneakers or the sneaker pattern ties him to this crime.” Nevertheless, the trial court relied on his presence in the area and his taped admission to “being there, knowing what they were doing before they went .... and staying while they broke in.”
The trial court found the juvenile guilty of attempted burglary of a residence and criminal mischief. The court withheld adjudication and placed the juvenile on probation. The trial court also ordered restitution.
The juvenile argues that his counsel’s failure to move to suppress his videotaped statements constituted ineffective assistance of counsel appearing on the face of the record. The State responds that the juvenile’s claim is not cognizable on direct appeal. Although ineffective assistance of counsel that is clear from the face of the record is reviewable on direct appeal, the State maintains there is no clear error in this record. We agree.
An ineffective assistance of counsel claim is subject to de novo review. Bowman v. State, 748 So.2d 1082, 1083-84 (Fla. 4th DCA 2000).
We have reviewed the videotaped statement and the trial testimony. We cannot discern from this record whether counsel was ineffective in deciding to forego a motion to suppress the statement.. The state *153 ment was largely exculpatory in nature, and counsel may have decided that it was more helpful than harmful. For this reason, we decline to reach the ineffectiveness claim in this appeal without prejudice to the defendant subsequently raising the issue. See Dennis v. State, 696 So.2d 1280 (Fla. 4th DCA 1997).
This brings us to the juvenile’s second argument that the trial court should have granted his motion for judgment of dismissal because the evidence was insufficient to prove his guilt of attempted burglary of a residence and criminal mischief. We agree.
“We apply a de novo standard of review for a motion for judgment of dismissal.” J.T. v. State, 47 So.3d 934, 935-36 (Fla. 4th DCA 2010).
The trial court articulated the circumstantial nature of the evidence and how most of the State’s evidence failed to prove anything. The evidence consisted of similar shoe prints found near the broken window, dirt in the sole of the juvenile’s shoe, a scratch on his arm, his presence near the crime scene, and his admission that he went into the backyard. As he argues in his brief, while insufficient to prove attempted burglary and criminal mischief, the evidence was sufficient to establish a trespass.
The juvenile’s hypothesis of innocence was that, although he went into the backyard, he left before any crime other than trespass had been committed. He maintained that he scratched his arm the day before the incident, and could not have injured it when the window was broken because he was wearing a long-sleeved jacket. The State offered nothing to contradict this hypothesis of innocence. The trial court should have entered a judgment of dismissal as to the crimes charged and found him guilty only of trespass. The trial court’s specific factual findings support this result.
We therefore reverse and remand the case for the trial court to reduce the finding of guilt to trespass and to reconsider the disposition order.

Reversed and Remanded.

GROSS, J. and JOHNSON, LAURA, Associate Judge, concur.